[Crim. No. 6347.   Second Dist., Div. Two.   Jan. 21, 1959.]

THE PEOPLE, Respondent, v. WILLIE JACKSON et al., Defendants; ROBERT HORTON, Appellant.

Ernest L. Graves, under appointment by District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

ASHBURN, J.—Appellant Horton, who was represented by counsel throughout the trial and motion for new trial, appeared originally in propria persona upon this appeal, presenting a brief which is built upon the assumption that he is entitled to a reweighing of the evidence by this court and that it should recognize as pertinent asserted facts which find no reflection in the transcript; a further assumption is that appellant's own evidence and inferences favorable to innocence should be accepted in preference to the proof showing guilt. In this appellant is fundamentally mistaken.

Upon appeal all evidence and all inferences tending to support the finding of guilt are to be accepted as true and the sufficiency of the evidence tested upon that assumption; the question of reasonable doubt is for the trial court, not the appellate tribunal. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Poindexter*, 51 Cal.2d 142, 148 [330 P.2d 763].) Thus viewed the evidence leaves no doubt about the necessity of affirmance.

The charge upon which appellant was convicted was burglary (Pen. Code, § 459) committed by him, Danny Hool and Willie Jackson, through entry into the residence of Andrew Coleman with intent to commit theft. Convicted of burglary in the first degree the crime was reduced to second degree upon request of the prosecutor. Appellant Horton was also charged with prior felonies, namely, burglary in Texas in 1939 and robbery in California in 1946; the court made no finding thereon. Defendant was sentenced for the term prescribed by law.

On the morning of December 12, 1957, the front doorbell of the residence of Andrew Coleman, at 200 West 54th Street, in the City of Los Angeles, rang three times. Mr. Coleman, 86 years of age, was alone in the house and not fully dressed. He went to the door, looked through the venetian blinds and saw no one. Turning to go back to the bedroom he was confronted by defendant Hool who waved a gun (or what appeared to be one) at him and said, "Give up." "Don't say a G-- d--- word." Coleman said, "Who is you? Why you come in?" and drew his cane back. Hool then turned toward the

kitchen. Coleman started for the front door to give an alarm. Before he could do so Hool returned with Horton. They tripped Coleman, had him down on his back, one held his feet and the other beat him with his fists in the mouth and elsewhere on the face, knocking out two teeth; they also tried to choke him. While one of them sat on him and held him down the other said, "You hold him down, I'm going to see what I can pick up." Soon this defendant returned, saying he had picked up what he could get and called the other one off. Coleman saw them no more. While these things were going on Coleman called his next door neighbor and she heard his voice, "Mrs. Jones, Mrs. Jones." She was already on the alert, for her dog was barking and she was looking out the window. When Mrs. Jones heard Coleman's voice it looked to her like he was being beaten but she could not see clearly. However, there was such "a fuss" she could not stand it and started to get help from another neighbor. Seeing two men across the street in an automobile and another getting into it, she told them someone had beaten the old man and asked them to come over and see what they were doing to him. As the three men (Echols, Hicks and Graves) approached, they saw two men, Horton and Hool, come from the rear of Coleman's house. Graves yelled, "You live back there?" One of them said "Yes" and both kept going. Echols and Hicks started after them and they began to run; one of them went "through some houses" but Horton ran until he reached a Mercury automobile (later identified as that of Jackson), put something into it and took something out, and then continued to run up Broadway. Echols and Hicks caught him and one of them held him until the other brought the police. Meantime, Graves, inside the Coleman home, was keeping the police informed. There he saw Mr. Coleman who was bleeding from the mouth and had blood all over the chest and stomach of his underwear. As Coleman expressed it, "The law taken me to the doctor" and the hospital. Before his arrest Graves asked Horton where he was going and he said "I'm going to get a job." Also, "You know me"; but he was a stranger to Graves. Coleman, Mrs. Jones, Echols, Hicks and Graves positively identified appellant Horton as a participant in the incidents above related.

Mrs. Mary Edwards, the daughter of Coleman, lived with him but was absent on the morning of the 12th of December. Upon her return she saw her injured father and made an examination to see if her money, some $54 to $60, was gone.

She kept it in a canvas bag in a locked trunk in her room at the back of the house. The money was there two or three days before the 12th. On this occasion she found the lock broken and twisted, torn off and hanging on the trunk which was open. The bag was there but the money was gone.

Horton's story as given to the police officers and repeated on the witness stand was that he was with one Appleberry at a certain coffee shop when Hool and Jackson drove up and asked him to go with them to help unstop a sink, which they had been trying to do all morning without success. He agreed to do so. They drove in Jackson's Mercury to 54th Street between Main and Broadway, parked and walked between houses to the rear of the Coleman home. A dog was barking. Hool and Jackson entered the enclosed porch of the Coleman home, told Horton to wait outside, which he did. Soon he heard "Oh! Oh!"; Hool ran out the back door, grabbed him, said "Let's get out of here." Appellant ran for the Mercury automobile but it was gone. He was stopped by two men who took him into custody. He says that he at no time entered the Coleman house or porch. In effect he said he had no intent to commit theft there and did not know that Hool and Jackson had that in mind. Appellant's brief assumes that the court can and should accept his testimony in preference to that of the prosecution witnesses. The trial judge rejected most of it and that fact ends the inquiry into credibility of witnesses. Moreover, appellant's testimony was impeached by his admission that he had been convicted of burglary in 1939 and robbery in 1946. There is no merit whatever in appellant's claim that the evidence should be resolved in his favor in this court.

Appellant's other point on appeal is that he did not waive a jury in the manner required by section 7 of article I of the Constitution, i.e., "by the consent of both parties, expressed in open court by the defendant and his counsel, . . ." The transcript shows the contrary. Appellant, Hool and Jackson were tried jointly. At the beginning of the trial respective counsel made motions for trial without a jury: "Mr. Martin: May the Court please, on behalf of the defendant Danny Hool, we wish to waive our right to a trial by jury and try the matter before the Court. Mr. Wilson: The same motion will be presented on behalf of the defendant Jackson and the defendant Horton." Jackson then formally waived a jury in person and through counsel. Hool did the same thing. Appel-

lant was present throughout. Then the following occurred: "Mr. Finnerty: Robert Horton is your true name? Defendant Horton: It is. Mr. Finnerty: On Count II, the burglary count, you are entitled to a jury trial. Your attorney, Mr. Wilson, has said you want to waive your right to a trial by jury and be tried by the Judge without a jury. Is that what you want? Defendant Horton: That is. Mr. Finnerty: Mr. Wilson, do you join? Mr. Wilson: I join. Mr. Finnerty: The People join. The Court: The Court accepts the waiver." The clerk's transcript also shows that "the defendant(s) personally and all counsel waive jury trial." The waiver at bar was clear and unambiguous, made by both defendant and attorney, and there is no indication that there was any lack of understanding on appellant's part. The law requires no more than this. (*People* v. *Bastio*, 55 Cal.App.2d 615, 618 [131 P.2d 614]; *People* v. *Beckworth*, 151 Cal.App.2d 842, 843 [312 P.2d 270]; *People* v. *Huerta*, 148 Cal.App.2d 272, 274 [306 P.2d 505].

This claim of nonwaiver of a jury is incorporated in a document entitled "Motion for Mandate of Dismissal" which was served with appellant's opening brief and is physically attached thereto. It concludes with the following: "The defendant moves that the Honorable Court vacate and set aside the verdict and sentence against this defendant on the above grounds." Manifestly, the motion does not lie.

Through counsel recently appointed by the court appellant has filed a supplemental brief urging error in denial of his motion for new trial. Though it is said that the trial judge at that point discounted the testimony of the victim, who had positively identified appellant as one of those who assaulted him in his house, and mistakenly concluded that he could not grant a new trial, we do not find this to be a correct interpretation of the record. This is also true of the claim that the judge expressed and followed a mistaken view of the law as to aiders and abettors. There was no error in the denial of a new trial.

Motion dismissed. Judgment and order denying new trial affirmed.

Fox, P. J., and Herndon, J., concurred.