[Crim. No. 6861.   Second Dist., Div. One.   June 2, 1960.]

THE PEOPLE, Respondent, v. JOE NICK GAMBOS, Appellant.

Leonard Nasatir for Appellant.

Stanley Mosk, Attorney General, and William F. James, Assistant Attorney General, for Respondent.

LILLIE, J.—An amended information charged defendant with possession of heroin and marijuana. By stipulation the matter was submitted to the trial court on the transcript of the testimony taken at the preliminary hearing. Additional evidence was heard and the court found defendant guilty. He was sentenced to the state prison.

Appellant herein contends (1) there was no probable cause to justify his arrest and (2) the evidence is insufficient to prove possession of narcotics.

Defendant had been under police surveillance for approximately four days; and, on the evening before his arrest, Officer Virgin observed him driving an automobile in which was also riding one Canejo, whom the officer had arrested on a prior occasion. Defendant stopped the car and Weido, whom Virgin had previously questioned regarding narcotic activities, got into the back seat. He rode two blocks and then got out; and, stopped by the officer, he told him that he had been trying to "score" from both of the men but they were out of "stuff."

The next evening a man and a woman, to whom Virgin had previously spoken concerning narcotics, drove up to defendant's house, which the woman entered; and after five minutes, she and defendant were observed in the bathroom where police, through an open window, observed her hold up what appeared to be a hypodermic needle and syringe. Shortly thereafter she left. Police kept the premises under surveillance and an hour later defendant left, walking along the side of the house to a crawl hole underneath. He opened the hole, which was about three feet deep and two and one-half feet wide, placed his arm inside, drew it out and locked the screen which covered it. Officers stopped defendant as he walked from it to his car; and as Officer Virgin talked to him he noted defendant's eyes were pinpointed. Considering defendant to be under the influence of narcotic, Virgin arrested him; an examination of his arms disclosed fresh needle marks.

Defendant denied having narcotics on his person or in his house and consented to a search; the officers found none, but the house revealed empty cap boxes, gelatin capsules and balloons. Officer Virgin then took the key he had obtained from defendant and opened the screen to the crawl hole under the house, finding therein a small child's jacket in the sleeve of which was tucked a bag containing four balloons each holding five gelatin capsules containing heroin, and a small paper sack containing marijuana. Confronted with this evidence and asked if it was his, defendant said, "No, I am not copping out to anything." Then, regarding fingerprints, defendant at the same time said, "You will find my fingerprints all over it."

In his defense defendant admitted a woman had been in his home just before his arrest, but denied any narcotic activities. He testified that because of a big tree on the side of the house it was impossible to see through his bathroom window; that he did not give permission to search the house; that he did not own the narcotics found; that he had not been under the influence of narcotics; and there had been no needle marks on his arms.

The term, reasonable or probable cause, has been defined as " 'such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty.' (*In re McCarty,* 140 Cal.App. 473, 474 [35 P.2d 568].) " (*People* v. *Ambrose,* 155 Cal.App.2d 513, 521 [318 P.2d 181].)

"In determining what constitutes reasonableness each case must be reviewed in the light of its own facts (*Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374])." (*People* v. *Ambrose, supra,* 521); and "it is settled (however) that reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt. (Citations)." (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535]).

Applying the foregoing rules, we conclude that the officers were reasonably justified in arresting defendant. The day before his arrest, defendant was seen with one (Weido) previously questioned by Officer Virgin regarding narcotics, and a man (Canejo) whom Virgin had previously arrested, which association constitutes a factor to be considered in determining probable cause (*People* v. *Hollins,* 173 Cal.App.2d 88 [343 P.2d 174]). That one of his companions was then engaged in narcotics activities is borne out by the officer's testimony that immediately after Weido got out of defendant's car he told him he was trying to "score" from both men, they were out of "stuff" but would have some later in the evening. Concerning defendant's further conduct, just before his arrest, about 10:45 p.m., a woman, to whom Virgin believed he had previously spoken concerning narcotics, was seen in defendant's bathroom shortly after her arrival holding what appeared to be a hypodermic needle and syringe; an hour after she left, defendant walked out of the house over to a crawl hole beneath it and placed his hand in it, later locking the cover. On the way to defendant's car Virgin,

who was an experienced narcotic officer, engaged him in conversation, observed the condition of his eyes as a symptom of narcotics influence, arrested him, examined him, and found fresh needle marks—another set of circumstances to be considered in determining probable cause (*People* v. *Muniz,* 172 Cal.App.2d 688 [342 P.2d 53]).

The use of informants and their information is not involved in the instant case as urged by appellant, for reliance was not here placed on any informer but upon what the officers personally observed defendant do, his association with three persons previously questioned by the officer concerning narcotics, one of whom he had arrested on a prior occasion, and his activities with them. This, together with defendant's suspicious movements beneath his house at 11:45 p.m., and his physical condition, more than constituted sufficient facts to lead a prudent man to entertain a strong suspicion that defendant was guilty of having narcotics in his possession.

Appellant's only other claim relates to the sufficiency of the evidence to prove possession. He contends there was no evidence that he put anything in the crawl hole, which was accessible to anyone outside a four-unit building, and that he at no time admitted possession of the narcotics. This he says falls short of ''constituting a sufficiency to show possession.''

██ ''Upon appeal all evidence and all inferences tending to support the finding of guilt are to be accepted as true and the sufficiency of the evidence tested upon that assumption; the question of reasonable doubt is for the trial court, not the appellate tribunal (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Poindexter,* 51 Cal.2d 142, 148 [330 P.2d 763] '' (*People* v. *Jackson,* 167 Cal.App.2d 270, 271 [334 P.2d 114]). ██ The appellate court will not weigh the evidence, determine credibility of witnesses, or make a factual determination, for this is within the province of the trial court; the reviewing court will consider and determine only whether, upon the face of the record, it can be held that the trier of the fact could have found sufficient facts to warrant the inference of guilt.

██ It has long been recognized that possession can be established by circumstantial evidence and inferences that may be reasonably drawn therefrom (*People* v. *Lunbeck,* 146 Cal. App.2d 539 [303 P.2d 1082] ; *People* v. *Robarge,* 151 Cal.App. 2d 660 [312 P.2d 70]). ██ The question whether appellant knowingly had possession of the narcotic was a factual matter to be determined by the trial court (*People* v. *Brown,* 102 Cal.

App.2d 60 [226 P.2d 609]), which it decided by accepting the officer's version of what occurred and rejecting that of defendant. ■ Considering the testimony of the officer and the circumstances surrounding the arrest, it is clear that the marijuana and heroin found in the crawl hole belonged to defendant and he knew of its narcotic nature. It is obvious from defendant's own testimony that he had considerable narcotic experience; he also testified that he had the key to the crawl hole, having several days before purchased the lock for it. At a late hour in the night, defendant under most suspicious circumstances went to the hole underneath the house, opened it, reached into it with his arm, closed and locked the screen. Nothing of value was found in the hole except the narcotics and a small child's jacket. Immediately after the defendant's activities that night, he appeared to be under the influence of narcotic and bore on his arms numerous fresh needle marks. In addition to this, a search of defendant's house revealed all kinds of narcotic paraphernalia—empty cap boxes, gelatin capsules and colored balloons; the heroin taken from the crawl hole was packaged in similar capsules inside balloons. Although he denied the narcotics belonged to him, defendant did say " (Y)ou will find my fingerprints all over it." In view of these circumstances and the reasonable inferences that can be legitimately drawn therefrom, we conclude that the evidence is more than sufficient to support the implied finding of possession of the narcotics taken from the hole.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.