[Crim. No. 5653.   Second Dist., Div. One.   Aug. 27, 1956.]

THE PEOPLE, Appellant, v. BILLY LA VALLY WEST, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan, Fred N. Whichello, Lewis Watnick, Deputy District Attorneys, for Appellant.

Harry Weiss for Respondent.

FOURT, J.—This is an appeal by the People from an order setting aside an information pursuant to the defendant's motion under Penal Code, section 995.

In an information filed by the district attorney of the county of Los Angeles, the defendant was charged with the crime of burglary, in violation of section 459 of the Penal Code, in that on or about January 28, 1956, he wilfully entered an automobile of William J. Baisley, the doors of which automobile were locked.

A fair résumé of the facts, as testified to, is as follows: William J. Baisley was the owner of a 1956 Oldsmobile automobile. On Saturday, January 28, 1956, at about 5:45 o'clock p.m., he parked his car in a parking lot at the Alpha Beta Market on Rodeo Road. He locked the doors and windows

of the car, left it in a good condition, but unattended, and took the keys with him. In about one-half hour he returned and the two windows on the driver's side on the front door were broken. When he left the automobile there were some clothes in it which had just been received from the "Excell" cleaners; when he returned, the clothes were gone. The clothing consisted of a variety of pants, a big, heavy sheep-lined jacket, a brown checked sport jacket and a light brown gabardine jacket, all of the value of about $200. No permission or authority was given to the defendant to open the automobile, or to take anything therefrom.

On the next Tuesday, the police returned one-half of the clothing taken, including a heavy black coat, which belonged to William J. Baisley's sister-in-law, some women's pedal pushers and some slacks. The trousers contained a cleaner's tab or marker which read "William Baisley, 8-197-6." On another item there was a tab or marker with the name "Excell" written thereon, and "H. Baisley," being the name of Mr. Baisley's sister-in-law.

Wallace R. Chittenden testified that he was a police officer and about 9:20 o'clock p. m., just before the arrest, he saw the defendant walking easterly on Santa Barbara Street, approaching Paloma Street, on the darker portion of the sidewalk, carrying a large bundle of clothing carelessly wadded together. When the officer started to approach the defendant he started to walk away. The defendant then placed the clothing on the hood of the police car and started to unwrap the bundle or "tangled wad," and showed the officers some of the clothing. There apparently was no paper or string to bind the bundle together.

At the time and occasion above set forth, the officers did not have a report of the particular burglary of the Baisley automobile. However, the officers did have reports of numerous burglaries in the area which they were then patrolling.

The officers thereupon asked the defendant where he had obtained the garments and he said that they belonged to him and that he had just taken them out of the Adams Cleaner and was en route home from the Adams Cleaner with the cleaning. The defendant was asked again if the clothing was his and he answered, "Yes." The officer then asked him if he could put some of the clothing next to him to see if the items fitted, and he said that he would. He put up a pair of the trousers next to him and they did not appear to "come anywhere near fitting the defendant." The officers then saw

that the most of the clothing was women's apparel, and thereupon placed the defendant under arrest.

The defendant was then taken to the police station and before he was booked, the officers received information of the burglary of the Baisley car, listing Baisley as a victim and describing along with it the clothing which was in the defendant's possession. The witness had observed the name Baisley on the marker tabs and the clothing described as stolen, and with this information booked the defendant for burglary.

On *voir dire* examination, the witness said he did not have a warrant or a report of a burglary which had occurred the particular night of the arrest. The officer further testified:

"Defendant stated that he had found his clothing—first, he stated, 'I know you won't believe this story,' he said, 'but I was following a Yellow cab.' He said this Yellow cab pulled up to the curb at 42nd Place and Central Avenue. He said, 'Now, I know you won't believe this story,' he said, 'but this cabbie pulled up behind it,' and he said, 'When the cab pulled away I saw this big bundle of clothes on the curb,' he says, 'so naturally I picked them up and put them in my car because they looked like pretty nice clothes.' He said he then called his home with the intention of asking his mother what size clothing she wore, and he said when we stopped him he was en route home to see if these clothes fit his mother."

. The officer further testified that he believed that the defendant put the clothes down voluntarily, stating, ". . . he couldn't get to his identification without putting them down." During this time, and during the conversation, the defendant was not under arrest.

The pedal pushers were identified as having been stolen from the Baisley car and as one of the garments that the defendant put down on the police car. There was attached the tab or marker, marked "Excell," with "Baisley" written in ink thereon. A pair of men's slacks had the name "William Baisley" written on an Excell tab marker, and were identified as having been stolen and as one of the items that the defendant had at the time and place above set forth.

We are of the conclusion that the defendant was legally committed.

There were suspicious circumstances in the situation which confronted the officers. Ordinarily, a person does not walk down the dark side of a sidewalk at night with clothes just newly picked up from the cleaners, carelessly wadded and wrapped together in an indiscriminate bundle. The officers

started to walk toward the defendant and as they did so, the defendant started to walk away. The officers then pursued a reasonable inquiry and from the answers given by the defendant to proper questions put by the officers, it was fairly obvious that the defendant was not telling the truth with reference to the wearing apparel. He said at first that the clothes were his. He then demonstrated that the clothes did not fit him at all—it was further demonstrated that the most of the wearing apparel was women's, and that the cleaner's mark on the clothes was not "Adams Cleaners," but "Excell Cleaners." Further, the defendant changed his story to state that he had found the clothes when a taxicab had pulled away. All of this reasonably led the officers to believe, and properly so, that the property was stolen, and under such circumstances the arrest was lawful.

Section 836 of the Penal Code provides, among other things, when a police officer can make an arrest.[1]

█ It was said in *People* v. *Jaurequi*, 142 Cal.App.2d 555 at page 559 [298 P.2d 896]:

"It is settled that reasonable cause to justify an arrest is not necessarily limited to evidence which would be admissible at the trial on the issue of guilt (*People* v. *Boyles*, 45 Cal.2d 652, 656 [290 P.2d 535]; *Willson* v. *Superior Court*, 46 Cal. 2d 291, 294 [294 P.2d 36]). 'The term, reasonable or probable cause, has been defined: "By 'reasonable or probable cause' is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty." (*In re McCarty*, 140 Cal.App. 473, 474 [35 P.2d 568].)

" 'The term, probable, has been defined as meaning "having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." (*Ex parte Heacock*, 8 Cal.App. 420, 421 [97 P. 77].)' (*People* v. *Novell*, 54 Cal.App.2d 621, 623-624 [129 P.2d 453].)

[1] "A peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence.

"2. When a person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested.

"5. At night, when there is reasonable cause to believe that he has committed a felony."

"It was stated in *People* v. *Brite,* 9 Cal.2d 666, at page 687 [72 P.2d 122]: ' "Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (Citing cases.) Reasonable or probable cause is a question of law, where there is no conflict to be decided by the court. (Citing cases.) '

"There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances. (*Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374].) "

Reasonable cause has been defined by our California Supreme Court as such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest, strong suspicion, that the person in question is guilty of a crime. (*People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73].)

There is, of course, nothing unreasonable in an officer questioning persons outdoors at night, and when a response to a reasonable inquiry elicited evidence that the defendant may have been guilty of a crime, especially where, as here, the officers had numerous reports of "burglaries in the area," the officers' conduct was not unreasonable. (*People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531]; *People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57]; *Gisske* v. *Sanders,* 9 Cal.App. 13 [98 P. 43], cited in *People* v. *Simon, supra; People* v. *Rodriquez,* 140 Cal.App.2d 865, 868-869 [296 P.2d 38].) The occurrences and facts before the officers, and the inferences that could reasonably be drawn therefrom, ". . . left no doubt not only as to the reasonableness but as to the necessity for an investigation." (*People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52].)

We are of the conclusion that there was in fact no search or seizure as the terms are used in the cases. The clothes were placed on the police car by the defendant voluntarily, and he started to unwrap them and show the items to the officers. As used in this connection, the term implies some exploratory investigation or an invasion and quest, a looking for or seeking out. The quest may be secret, intrusive or accomplished by force, and it has been held that a search implies some sort of force, either actual or constructive, much or little. A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of

sight, it is generally held that the mere looking at that which is open to view is not a "search." ██ A seizure contemplates a forcible dispossession of the owner and it is not a voluntary surrender. (79 C.J.S. 775-776.) In this case, the defendant showed the officers the clothing and there is no evidence whatsoever that the apparel was forcibly taken from him.

Even, however, if it be held that there was a search by the officer to find the name on the laundry tag, the evidence reveals that the defendant voluntarily showed the officer the clothing. ██ Since the defendant voluntarily produced the evidence against himself, any constitutional rights he might have had were not violated and any search or taking of evidence pursuant to his consent is not unreasonable. Consent is a question of fact and in this particular case, the defendant did not testify. ██ As was said in *People* v. *Michael*, 45 Cal.2d 751, 754 [ 290 P.2d 852] :

". . . to hold as a matter of law that the evidence was produced in response to an unlawful assertion of authority would seriously hamper officers in the reasonable performance of their duties. Thus, it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. Such inquiries, although courteously made and not accompanied with any assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority.

"We are not unmindful of the fact that the appearance of four officers at the door may be a disturbing experience, and that a request to enter made to a distraught or timid woman might under certain circumstances carry with it an implied assertion of authority that the occupant should not be expected to resist. (Cases cited.) Neither defendant nor her mother testified at the preliminary hearing, however, and the testimony that was given indicates only that the evidence was voluntarily produced in response to a reasonable inquiry."

██ Police officers are guardians of the peace and security of the community and are concerned with criminals in a complex society— ". . . and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their

duties and are faithful to the trust reposed in them. Among the duties of police officers are those of preventing the commission of crime, of assisting in its detection, and of disclosing all information known to them which may lead to the apprehension and punishment of those who have transgressed our laws. . . . It is for the performance of these duties that police officers are commissioned and paid by the community, . . ." (*Christal* v. *Police Com.,* 33 Cal.App.2d 564, 567 [92 P.2d 416].)

The adoption of the exclusionary rule ". . . opens the door to the development of workable rules governing searches and seizures and the issuance of warrants that will protect both the rights guaranteed by the constitutional provisions and the interest of society in the suppression of crime." (*People* v. *Cahan,* 44 Cal.2d 434, 451 [282 P.2d 905].)

In view of what the officers saw and heard, it is our conclusion that it was not unreasonable for them to entertain an honest and strong suspicion that the defendant was guilty of a crime. In our opinion the officers had reasonable cause to arrest the defendant and if there was a search, it was entirely proper as an incident to the lawful arrest.

For the foregoing reasons, the order appealed from is reversed.

White, P. J., and Doran, J., concurred.