[Crim. No. 7565. First Dist., Div. Four. Nov. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM LAWSON, Defendant and Appellant.

## COUNSEL

A. Wallace Tashima, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Horace Wheatley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DEVINE, P. J.**—Appellant pleaded guilty to violation of section 11500 of the Health and Safety Code (possession of heroin). He had made a motion to suppress the evidence, which was denied, and therefore he is entitled to appellate review despite his plea of guilty. (Pen. Code, § 1538.5, subd. (m).)

On January 3, 1968, at approximately 2:15 a.m., four uniformed police officers went to the door of 102 Haight Street, San Francisco, in an attempt to locate one Sigmund Sprintz, who was known to one of the officers, Daniels, as a narcotics peddler and who was suspected as the perpetrator of a recently attempted murder and possible robbery. The officers had received information at about 1 a.m. from an untested informant that

Sprintz was residing there. The informant said that he had seen Sprintz in the building on the afternoon of January 2. There was a teletype warrant out for Sprintz' arrest, and this was known to the officers. It was also known to the police that immediately following the crimes for which the warrant had been issued, witnesses had seen Sprintz entering the apartment at 102 Haight Street.

On January 3, 1968, the victim of the attempted murder was in critical condition at a hospital. The informant had told the police the "exact apartment," No. 102, where Sprintz was supposed to be living. The officers found, while they were checking for No. 102, that the apartments downstairs in the building were not numbered. The officers suspected that Sprintz would be there at the time of their visit. They were not looking for appellant Lawson.

The officers rang the door bell and one Thomas Mitchell answered. Officer Daniels told Mitchell that he would like to speak to the owner of the apartment and Mitchell said "O.K." and turned and walked upstairs; the officers followed him. The police asked Mitchell what he was doing on the premises and he replied that he was visiting. They made no further inquiry of him. Officer Daniels testified: "We didn't know it was a flat at that time. We thought it was more apartments like the lower level, so we followed him upstairs into the apartments." Actually, the downstairs seems to have consisted of several apartments but the upstairs was a flat. Mitchell went straight ahead into the kitchen and the police followed him. Mitchell started calling for "Bill" or "Bill Love" (a name sometimes used by appellant). He called in the direction of the bedroom, the door of which was open. Officer Daniels saw appellant lying on a bed and saw a balloon and a spoon, which the officer recognized as narcotics paraphernalia. Appellant jumped up from the bed, demanded a search warrant, and attempted to close the door. The officer pushed open the door and arrested appellant. A search was made, and in a coin-type purse which was in a cabinet of the bed's headboard a yellow balloon was found which contained heroin.

It is convenient to discuss the seizure of the evidence and the events which preceded it in reverse chronological order. ■ The search and finding of the heroin in the purse were incident to the arrest and are not rendered unlawful by *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], because the *Chimel* holding is not retroactive. (*People* v. *Edwards*, 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713].) ■ Next, as to the entry of the bedroom from the kitchen: there was nothing unlawful about this particular entry because the objects which are customarily used in the administering of narcotics were in plain

sight. What is in plain sight is not the object of search. (*United States* v. *Lee,* 274 U.S. 559, 563 [71 L.Ed. 1202, 1204, 47 S.Ct. 746]; *People* v. *Alvarez,* 236 Cal.App.2d 106, 112 [45 Cal.Rptr. 721].)

■ We come, therefore, to the essential question in the case, which is whether there was a violation of the Fourth Amendment by reason of the officers' entry into the kitchen. We conclude there was not such violation. Even in search cases the Fourth Amendment forbids only searches which are *unreasonable* (*United States* v. *Rabinowitz,* 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430]); but in fact the officers were not conducting a search at all when they entered the building or any room thereof. They were seeking an interview with the owner. They did not even know, according to Officer Daniels, whether Sprintz "owned" the apartment or not. Had they come upon Sprintz, no doubt they would have arrested him at once under the teletype warrant. Since the information which they had at the time was that Sprintz had attempted a murder, the officers themselves had to be expeditious about their work within the building, for they might have encountered Sprintz at any moment. There was no evidence whatever that they were looking for any person or thing except Sprintz (who they thought might be the "owner" of the premises), or for whatever other person might be the "owner," for the single purpose of gaining information about Sprintz.

The officers believed that the whole building was divided into apartments. At just what point they may have discovered that they were within a domicile does not appear, but if we assume that this was shortly before they entered the kitchen, we believe it was not necessary for the officers to demur to the leading on by Mitchell and to express unwillingness to proceed until the resident, or someone formally authorized by him, should grant consent. Such nicety is not required of officers who are in pursuance of the serious duty of tracking down a fugitive felon, who have reason to believe they may meet him at any moment, and who are not attempting by ruse or subterfuge of any kind to find contraband. The Constitution does not guarantee to the possessor of contraband that his acts will not be discovered so long as he is in his residence, but that his home will not be subjected to unreasonable search. The whole purpose of the exclusionary rule is the discouraging of unreasonable activity on the part of law enforcement officers. (*People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469].) There was no such unreasonable activity in this case.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied December 5, 1969, and appellant's petition for a hearing by the Supreme Court was denied January 8, 1970.