[Crim. No. 17187. Second Dist., Div. One. Sept. 21, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LEON X. L. WHITE, Defendant and Appellant.

392

## COUNSEL

Cain & Morris and Carl L. Cain for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard W. Bakke, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—The trial court found defendant guilty of possession of heroin (§ 11500, Health & Saf. Code); he admitted two prior convictions of violations of section 11501, Health and Safety Code. Defendant's motion for new trial and application for probation were denied and he was sentenced to the state prison. At the same time probation on a previous conviction of sale of

heroin (§ 11501, Health & Saf. Code) granted in 1967 was revoked. Defendant appeals from the judgment in the main case and order revoking probation.

For five years Officer Bach had been receiving information concerning a residence at 315 Brooks Avenue in Venice. In December 1968 a reliable informant again told him that narcotic activity was being conducted there and that a man named "Boss Man" was living there, giving his description, the man had a green Buick and was selling heroin there taking property in exchange. Thereafter a surveillance team of eight officers, including Officer Bach, periodically conducted a surveillance at that address. Just after Christmas 1968 a second reliable informant told him that a male Negro by the name of Leon White (defendant) was selling narcotics there, he had bought narcotics from defendant who would rarely sell to a male, only to females, and the narcotics were in the back of the house on the porch area of the kitchen. In the middle of January 1969 the surveillance team observed traffic of people going in and out of the residence. For two weeks prior to defendant's arrest (January 17, 1969) Officer Bach personally engaged in the surveillance; he observed males and females going in and out of the address; he knew some of the females to be prior addicts and some of them he would stop, talk to, write an F.I. card and check to see if they were using narcotics.

On January 17, 1969, Officers Murphy and Andrews of the Venice station informed Officer Bach they had received information that a female Latin, 15 to 17 years old, named Della, possibly a runaway, was staying at 315 Brooks Avenue; a third informant said she had been buying narcotics from defendant for over six months and had gone to his place that day, he kept the narcotics in the trash can with the trash on the back porch between the kitchen and the back porch and there was a female juvenile there by the name of Della; and his second informant also told him there was a juvenile by the name of Della staying at that address. Thus, between 7:15 and 7:30 p.m., Officer Bach went to 315 Brooks Avenue to make a narcotics investigation; present were several other officers; he saw parked in front of the residence a medium green 1959 or 1960 Buick which previously he had seen defendant drive. Officer Bach went to the front door and knocked; a female who identified herself as Della Avila answered the door; while standing on the porch at the front door he told her he was looking for Leon [defendant] and she told him he had just left; he said he was conducting a narcotics investigation and she was probably a juvenile runaway and he wanted to see some identification; she said, "Fine. I have it in my purse," then they went to a room off the back porch which was a bedroom where she got her purse and handed him an unofficial I.D. card "a type that comes when you buy a wallet . . . one that you would fill out yourself." The officer asked her birth date and for further identification; again Della looked in her purse and pro-

duced another I.D. card with a different name on it; while she was thus looking he observed in her purse a package of cigarette papers and a marijuana cigarette; he continued to ask for further identification and finally she showed a third I.D. card which bore a different name; at this time he tried to determine how old she was and her true name but Della said that one of the cards in a different name was used for hospital purposes; at this time he told her she was under arrest for narcotics and to be seated in the living room. At this point other people were knocking on the door; they came in individually—one said he was Della's boy friend, a female wanted to see defendant since it was his birthday, they were going to have a party for him and she had gotten a present for him, another girl said she wanted to see defendant but did not say why, others said they wanted to see defendant, they were going out for the evening and were going to take him along. Two women had needle marks on their arms.

After Della's arrest Officer Bach went to the kitchen area of the back porch, made a search and found beneath quite a bit of trash in the trash can a brown paper bag containing five balloons of heroin. About 15 minutes later defendant walked through the front door; Officer Andrews advised him he was under arrest for narcotics and started to tell him about the narcotics and stolen property; he volunteered, "I knew you were looking for me, that is why I came in." Officer Andrews continued to warn defendant of his rights and Officer Bach mentioned a small portable television which was stolen, and defendant again volunteered, "Why don't you check that big one, too, it's also hot." The officer did so and the official check showed it was "a 1963, stolen." Officer Bach told him the police were going to take the property out of the house, and the property reported as stolen was removed.

Defendant neither testified nor offered a defense.

Appellant raises the issue of the sufficiency of the evidence in connection with both his motion for new trial and the judgment. He argues that numerous other persons had access to the premises, the house was not under his exclusive dominion or control and there was no evidence that he was the only person who lived there; and there is no showing he was aware of the presence of the heroin in the trash can, had actual or constructive possession of the narcotics or was dealing in narcotics.

■ " 'Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion or control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic.' (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal. Rptr. 327, 388 P.2d 359].)" (*People* v. *Showers,* 68 Cal.2d 639, 642-643 [68 Cal.Rptr. 459, 440 P.2d 939]; *People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Gorg,* 45 Cal.2d 776, 780

[291 P.2d 469].) ■ "These elements may be established by circumstantial evidence and any reasonable inferences to be drawn therefrom. (*People v. Groom, supra* [60 Cal.2d 694] at pp. 696-697; *People v. Villanueva, supra* [220 Cal.App.2d 443] at p. 450.) . . . ■ Constructive possession is sufficient and possession by any person when the defendant has an immediate right to exercise dominion and control over the narcotic will support a conviction. (*People v. Toms,* 163 Cal.App.2d 123, 128 [329 P.2d 90].)" (*People v. Boddie,* 274 Cal.App.2d 408, 411 [80 Cal.Rptr. 83].)

■ Viewing the evidence in a light most favorable to the respondent and presuming in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence (*People v. Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People v. Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]), we conclude that the record contains substantial evidence of all elements of the crime. (*People v. White,* 71 Cal.2d 80, 82 [75 Cal.Rptr. 208, 450 P.2d 600].) The evidence establishes that defendant occupied the house in which the heroin was found. Officer Bach had known defendant for seven years during which time, prior to January 17, 1968, he had seen him at the residence at 315 Brooks Avenue at least once a week and drive a medium green 1959 or 1960 Buick; on the evening he went to the residence to make a narcotics investigation he saw the Buick parked in front of the residence, although defendant was not then in the house. This is some evidence that defendant left it in front of his home, a place one would normally leave his car when it was not in use. When Della answered his knock he told her he was looking for defendant; she said he had just left the house. While he was in the residence talking with Della a number of people came up asking for defendant, all of whom appeared to be on intimate friendly terms with him and obviously came there as the place where they knew they would find him. When defendant arrived he walked in the front door, and as Officer Andrews advised him he was under arrest for possession of heroin and stolen property he volunteered, "I knew you were looking for me, that is why I came in." The inference from defendant's conduct is that in fact the premises were occupied by him and he was not surprised that the officers were looking for him there at his home; and when the presence of a stolen portable television was mentioned and he again volunteered, "Why don't you check that big one, too, it's also hot," he demonstrated his knowledge of the nature and character of the items in the house. There is nothing to refute the evidence from which the trier of fact could properly find that the premises were occupied mainly by defendant; and evidence that heroin was found in the back porch portion of the kitchen area

raised a reasonable inference that the narcotics were his even though Della may have shared the premises. " 'The decisions make it clear that possession need not be exclusive to support a conviction of possession of a narcotic . . . [Citation.]' (*People* v. *Hamilton,* 223 Cal.App.2d 542, 545 [35 Cal. Rptr. 812].)" (*People* v. *Yeoman,* 261 Cal.App.2d 338, 347 [67 Cal.Rptr. 869]; *People* v. *White,* 71 Cal.2d 80, 82 [75 Cal.Rptr. 208, 450 P.2d 600]; *People* v. *Boddie,* 274 Cal.App.2d 408, 411 [80 Cal.Rptr. 83].) ■ Mere possession of heroin would constitute evidence that he knew its narcotic nature. (*People* v. *White,* 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600].)

Appellant's last contention is that the trial court erred in denying his motion under section 1538.5, Penal Code, to suppress the evidence because the search of the premises had no relation to Della's arrest and his arrest was illegal.

■ Officer Bach's personal knowledge of defendant for some years prior and the information given to him by the first reliable informant were sufficient to justify an investigation which culminated in a surveillance of defendant's residence. During this activity he made various observations and received additional information from two more reliable informants which justified further investigation of defendant's activities there and a female juvenile's presence in defendant's home. (*People* v. *Berutko,* 71 Cal.2d 84, 90 [77 Cal.Rptr. 217, 453 P.2d 721].) He had the right to go to the premises, knock on the door and seek interviews with defendant and the juvenile. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852].) At the outset Officer Bach told Della they were looking for defendant, were conducting a narcotics investigation and she was probably a juvenile runaway; thus Della knew they were police officers and the reason they were there. To produce identification to show her name and age, Della went to a bedroom off the porch to look in her purse; Officer Bach went with her. Appellant has suggested in his argument and citation of *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665], that the entry was made without compliance with section 844, Penal Code, but there is no such issue here for the evidence supports no breaking of any kind. Della, an apparent occupant of the premises, opened the door to the officers. Not satisfied with an unofficial "identification" card, the officer asked Della for further identification which would show her age and true name. She produced various cards and while rummaging in her purse for the second one, the officer observed in the open purse a package of cigarette papers and a marijuana cigarette. The interior of Della's purse was open to plain view of the officer as was the marijuana cigarette and

it can hardly be contended that his observation of the narcotic therein was in any sense a search. (*People* v. *Alvarez,* 236 Cal.App.2d 106, 112 [45 Cal.Rptr. 721]; *People* v. *West,* 144 Cal.App.2d 214, 219-220 [300 P.2d 729].) The officer was entitled to act upon what he saw and arrest Della. (§ 836, subd. 1, Pen. Code; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) ■ A search without a warrant is reasonable when incident to a lawful arrest. (*People* v. *Gilbert,* 63 Cal.2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365].)

Much activity occurred at the point of Della's arrest with many persons coming into the premises seeking defendant, however, after he arrested her and shortly before defendant walked in the front door Officer Bach went to the trash area and found the heroin. The search was made "substantially contemporaneous" with Della's arrest. (*People* v. *Cockrell,* 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].) ■ "In order to be incident to an arrest a search must also be limited to the premises where the arrest is made, have a definite object, and be reasonable in scope. (*People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].)" (*People* v. *Cockrell,* 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].) ■ We conclude from the record that these elements were present in the search revealing the narcotics. It was readily apparent to Officer Bach from what he had previously been told, her presence in the residence and her obvious occupancy of the bedroom off the back porch that Della resided on the premises. From prior information given to him by reliable informants, his own observations of people going in and out of the premises, some of whom had needle marks and the marijuana found in Della's purse, the belief by the officer that there were additional narcotics on the premises was a reasonable one. ■ While the search exceeded the scope authorized by *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the latter applies only to cases in which the search took place after June 23, 1969. (*People* v. *Edwards,* 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713].) The search here was made January 17, 1969. ■ Della was arrested in the bedroom off the back porch where the narcotics were found. The search revealed contraband which, as far as Officer Bach knew, was part of the crime in which Della and particularly defendant were involved. The seizure of the heroin was proper. (*People* v. *Cockrell,* 63 Cal.2d 659, 667 [47 Cal. Rptr. 788, 408 P.2d 116].) *People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal. Rptr. 633, 458 P.2d 713], relied on by appellant is not similar to the case at bar except that the contraband was found in a trash can. In *Edwards* the marijuana was found in trash cans two or three feet from the back porch door, the search of which had no legal basis. Here the heroin was found in a

trash can inside the premises adjacent to the place of and incident to Della's arrest.

When defendant arrived Officer Andrews advised him he was under arrest for narcotics. A peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (§ 836, Pen. Code; *People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) ▮ Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officer at the moment of arrest are sufficient to warrant a prudent man in believing that defendant has committed an offense. (*People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Talley,* 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564].)

The judgment and order are affirmed.

Wood, P. J., and Thompson, J., concurred.