[Crim. No. 6268.    In Bank.    Oct. 24, 1958.]

THE PEOPLE, Respondent, v. LUTHER POINDEXTER, Appellant.

Kenneth C. Zwerin, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, John S. McInerny and Victor Griffith, Deputy Attorneys General, Thomas C. Lynch, District Attorney (San Francisco), and Walter H. Guibbini, Assistant District Attorney, for Respondent.

SPENCE, J.—Defendant was charged with the murder of Douglas Callies and with the furnishing of narcotics to a minor in violation of section 11714 of the Health and Safety

Code. He admitted three prior felony convictions. The jury returned verdicts of guilty and found the murder to be second degree. Defendant has appealed, contending: (1) that the evidence is insufficient to sustain the convictions; (2) that he was convicted on the uncorroborated testimony of an accomplice; (3) that the trial court committed prejudicial error in instructing on the elements of murder, and in failing to give a cautionary instruction relative to the evidence of an oral admission by defendant. We have concluded that defendant's contentions cannot be sustained, and that the judgment should be affirmed.

The alleged offenses occurred in San Francisco. Stanley Hoffman and the deceased, Douglas Callies, had been friends for several years. Both were minors, 20 years old. On the evening of September 27, 1956, Hoffman had planned to take two girls to the theatre. About 5:30 p.m., as Hoffman was leaving his home to pick up the girls, he received a telephone call from Callies. The latter, upon learning of Hoffman's plans, asked if he could go along and Hoffman agreed. Thereupon Hoffman drove to Callies' home, and the two then proceeded to the Fillmore Street area because Callies, who was in the Merchant Marine and had just returned from a cruise, wanted to buy some heroin. Both young men had used heroin in the past, and on several occasions they had used it together.

According to Hoffman, they first saw defendant on Fillmore Street near Golden Gate Avenue. Hoffman stopped his car and defendant got in the back seat. Hoffman had known defendant for several months, had previously purchased heroin from defendant, and had taken the heroin shots in defendant's hotel room on those occasions. Hoffman introduced Callies to defendant, told defendant that Callies wanted to buy some heroin, and defendant stated that he thought he could get some. Callies then gave defendant $50 and defendant left the car. In a few minutes defendant returned, gave Callies $15 in change, said "Everything is all right," and directed Hoffman to drive to a service station.

Hoffman proceeded to a nearby station and drove up to the pumps. Callies stayed with the car and arranged to get some gas, while defendant, carrying the heroin and the "outfit," accompanied Hoffman to the men's room. There they went behind the dividing partition, where defendant prepared the drug by cooking it in a spoon, helped Hoffman put a tourniquet around the latter's arm and held it in place while Hoff-

man took only a small injection as he was driving the car. Thereupon Hoffman went outside to telephone the girls that he would be late, and then waited in the car. Meanwhile Callies joined defendant in the men's room. In a few minutes, Callies and defendant returned to the car. Callies got into the front seat and sat with his chin on his chest. He acted "like he was almost unconscious," "mumbling a little bit," not "saying too much" but "groaning and moaning." Defendant got into the back seat, and Hoffman drove to defendant's hotel, where defendant remained.

Hoffman then drove to the Ingleside district to pick up the two girls. The girls wanted to sit in the front seat, so Callies, who was in a dazed condition but "able to stand on his feet" though "sort of fumbling around," was moved to the back seat. Hoffman drove to the neighborhood theatre and parked the car. It was about 7:30 p.m. Hoffman asked Callies if he wanted to go to the movie and Callies mumbled "no." Hoffman left Callies in the back seat of the car, rolled down the window, and locked all the doors. He took Callies' wallet and gave it to one of the girls to put in her purse, as he was afraid someone might try to "roll" Callies, thinking that he was drunk.

After staying for the full double feature program, Hoffman and the two girls returned to the car. As they approached the car, Hoffman saw Callies "leaning over toward the window" and thought that he was asleep. Hoffman slapped Callies twice but he did not move. Hoffman then felt Callies' face; it was cold. Hoffman became "scared," and finding that Callies had no pulse, he told the girls that Callies was dead. Hoffman was going to telephone the police, but the girls objected as they wanted to avoid any publicity. One of the girls began to cry, and Hoffman took her home. Thereupon Hoffman and the other girl drove to a churchyard, where Hoffman took Callies' body out of the car and placed it on the ground. Then after taking his companion home, Hoffman returned to his own home, without contacting the police. Hoffman was arrested about 11 a.m. the next day, September 28.

A number of experts testified that Callies died from narcotics poisoning. Heroin is a derivative of morphine, and an amount of morphine sufficient to cause death was found in Callies' body. There was also found an amount of alcohol equivalent to three-and-a-half bottles of beer or shots of whiskey, which was ingested a relatively short time before death. The amount of alcohol, however, was not significant

enough to contribute to death. No needle marks were found on the body by the autopsy surgeon, but he indicated that this was not uncommon, for it is very easy to inject material so that the site of the injection would be invisible. The autopsy surgeon estimated that at the time he examined the body, which was at 11 a.m. on September 28, the deceased had been dead over four to six hours but less than two or three days.

Defendant was the sole defense witness. He testified that he had known Hoffman for about three months and had seen him several times. He denied ever selling narcotics to Hoffman or using narcotics with Hoffman, except for the single occasion on September 27 here in question. He stated that Hoffman once asked him to sell narcotics which Hoffman's friend was to bring back from overseas, but that he had refused. He further stated that on one occasion Hoffman had borrowed his "outfit" to use with some other persons at a service station; and that on another occasion Hoffman had come to his hotel to ask for the use of his room to take an injection, but that he had refused because Hoffman had previously had trouble with his landlord.

With respect to the events of September 27, 1956, defendant testified that he had met Hoffman and Callies on the street and that they asked him if they could use his room and "outfit" to take some narcotics. He stated that he refused to let them use his room but agreed to let them use his "outfit" in return for some of their heroin. Defendant then went to his room, got his "outfit," and the three proceeded to the service station. There they went to the men's room in the sequence as related by Hoffman: first, defendant and Hoffman, but that Hoffman prepared the narcotic solution while he, defendant, readied the hypodermic needle, and that he then stood guard at the door while Hoffman went behind the partition and presumably took "a fix"; that Hoffman then emerged from the room and sent Callies in to "take a fix," while defendant continued to guard the door; and finally, after Callies finished, defendant went in for his own "fix." Defendant denied that he had mixed the narcotic solution or assisted Hoffman and Callies in taking their shots. He further denied having received $35 from Callies as payment for the heroin, but claimed that Callies furnished the heroin, presumably having brought it in from overseas.

As a rebuttal witness, the prosecution produced a policewoman who had accompanied Hoffman to defendant's room

on the evening of October 1, 1956, before defendant's arrest. She stated that she was introduced to defendant as a friend of Hoffman, and that in her presence defendant told Hoffman that he had sold "a $35 paper" to Callies on the fatal night. On surrebuttal, defendant again took the witness-stand, admitted the related visit of October 1 in his room but claimed that the only mention of narcotics there was Hoffman's request of defendant to "get us some stuff" and that he, defendant, refused. Defendant denied that there was any conversation relative to "a $35 paper."

Defendant first contends that the evidence was insufficient to sustain the conviction. ■ The "test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt." (*People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911] ; see also *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) ■ Applying this test first to the charge of furnishing narcotics to a minor (Health & Saf. Code, § 11714), the record clearly sustains the conviction. While there was conflicting testimony as to who supplied the heroin, the jury apparently chose to accredit Hoffman's version, and its determination will not be disturbed.

■ Defendant makes a further objection to this conviction because the indictment did not include the name of the minor victim. But such omission did not render this count in the indictment defective. (*People* v. *Leiva*, 134 Cal.App.2d 100, 102 [285 P.2d 46].) ■ There was no uncertainty on this matter as presented to the jury. True, there were two minors —Hoffman and Callies—involved in the criminal transaction with defendant, but it clearly appeared throughout the trial that the count specifically charging a violation of the narcotics law (Health & Saf. Code, § 11714) related to the minor Hoffman. Prosecuting counsel expressly so stated in his opening argument, and twice repeated the statement in his closing argument. Hoffman had testified that he was 20 years of age at the time involved, and as corroborating proof, his was the only birth certificate introduced on the minority issue. Defendant at no time during the trial demurred or offered any objection to the sufficiency of this charge in the indictment. Such condition of the record leaves no uncertainty as to the premise of defendant's conviction on this count, and would permit defendant to establish former jeopardy in the event of a subsequent accusation. In such circumstances, defendant's

substantial rights were in nowise affected. (*People* v. *Leiva, supra,* p. 103.)

Nor can defendant prevail in his challenge of the sufficiency of the evidence to support his conviction of murder in the second degree. The furnishing, selling, or administering of narcotics to a minor is a felony. (Health & Saf. Code, § 11714.) Here there was uncontroverted testimony that Callies died from narcotics poisoning, and that taking a shot of heroin was an act dangerous to human life. Death resulting from the commission of a felony such as furnishing, selling or administering of narcotics to a minor constitutes murder of the second degree. (Pen. Code, § 189; *People* v. *Powell,* 34 Cal.2d 196, 205 [208 P.2d 974].) Defendant unavailingly argues that the evidence "at best" supports only a verdict of manslaughter, citing *People* v. *Hopkins,* 101 Cal.App.2d 704 [226 P.2d 74]. In that case, as here, the decedent died from narcotics poisoning. But there a manslaughter conviction was deemed proper because the evidence showed defendant to have assisted the decedent "in the commission of an unlawful act *not amounting to a felony.*" (Emphasis added, p. 706; Health & Saf. Code, §§ 11721, 11009.)

Defendant next contends that his convictions should be reversed because Hoffman was an accomplice within the meaning of section 1111 of the Penal Code, and the trial court failed to instruct on the necessity of corroboration of his testimony. But that section defines an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant on trial." Here defendant was charged with two offenses, to wit: The murder of one minor and the furnishing of narcotics to the other minor. The murder charge was prosecuted upon the theory that the death of the deceased minor resulted directly from defendant's feloniously selling, furnishing and administering narcotics to said deceased minor. Thus neither person to whom defendant furnished narcotics was an accomplice of defendant as to the underlying offenses of selling, furnishing and administering the narcotics to said persons. (*People* v. *Lamb,* 134 Cal.App.2d 582 [285 P.2d 941].) To be an "accomplice" within the meaning of the cited section, one "must stand in the same relation to the crime as the person charged therewith and must approach it from the same direction." (*People* v. *Baskins,* 72 Cal.App. 2d 728, 731 [165 P.2d 510].) Furthermore, both Hoffman and the deceased were minors to whom defendant feloniously sold, furnished and administered the narcotics. In the prose-

cution for such offenses, the minors are regarded as victims rather than as accomplices, and the testimony of the minors therefore does not require corroboration. (*People* v. *De-Paula,* 43 Cal.2d 643, 647 [276 P.2d 600]; *People* v. *Freytas* 157 Cal.App.2d 706, 713-714 [321 P.2d 782]; see also *People* v. *Deibert,* 117 Cal.App.2d 410, 427 [256 P.2d 355]; *People* v. *Stanley,* 78 Cal.App.2d 358, 361 [177 P.2d 968].) ▇ Since neither minor was an accomplice of defendant in the commission of the underlying offenses on which both counts were based, we are of the opinion that Hoffman should not be held in this prosecution to be an accomplice of defendant as to either count.

▇ Defendant next contends that the trial court improperly instructed on the crime of murder. In its instructions the court necessarily referred to the two degrees of murder, since the crime of murder of the second degree may only be defined by relating it to murder of the first degree. Section 189 of the Penal Code provides "and all other kinds of murder are of the second degree." (Pen. Code, § 189.)

▇ But both the prosecuting attorney in final argument and the trial court in the instructions expressly negatived the possibility that the evidence could sustain a conviction of murder of the first degree, and expressly stated that a verdict of murder, if found, could only "be second degree." Defendant's claim that the evidence "at best" would support only a verdict of manslaughter relying on *People* v. *Hopkins, supra,* 101 Cal.App.2d 704, has been discussed above and the situation here distinguished because of the felony involved. (Health & Saf. Code, § 11714.) The court plainly limited its instructions on the murder charge to accord with the facts presented at the trial, so that they could in nowise prejudice defendant's rights.

▇ Defendant finally contends that the trial court committed prejudicial error by failing to give of its own motion an instruction that evidence of an oral admission by defendant should be viewed with caution. (Code Civ. Proc., § 2061, subd. 4; *People* v. *Bemis,* 33 Cal.2d 395 [202 P.2d 82].) The oral admission in question relates to the testimony of a policewoman called to rebut defendant's testimony on cross-examination. Defendant had admitted on cross-examination that Hoffman and a woman companion had visited him in his hotel room on the evening preceding his arrest, but he denied that during such visit he had told Hoffman that he had sold "a $35 paper" of narcotics to Callies on the fatal night. In

rebuttal, the policewoman testified that she was the woman who had accompanied Hoffman to defendant's room on the mentioned occasion, and that in her presence defendant told Hoffman that he had secured "a $35 paper" for Callies on the night he died. It is therefore clear that defendant's alleged oral admission was introduced by the prosecution for purposes of impeachment rather than as part of its case-in-chief. Such evidence appears relatively inconsequential in comparison with the remaining proof of defendant's guilt. In short, if the cautionary instruction had been given, it appears improbable that the jury would have discounted the testimony to such an extent that they would have returned a different verdict. Under the circumstances, it may be assumed that the instruction should have been given, though not requested by defendant, but we find no prejudicial error resulting from the failure to so instruct. (*People* v. *Letourneau* 34 Cal.2d 478, 492 [211 P.2d 865] ; *People* v. *Koenig*, 29 Cal. 2d 87, 94 [173 P.2d 1] ; *People* v. *Lowell*, 77 Cal.App.2d 341, 349 [175 P.2d 846] ; *People* v. *Macias*, 77 Cal.App.2d 71, 80 [174 P.2d 895].)

The judgment and the order denying a new trial are affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied November 19, 1958.