[Crim. No. 16292. Second Dist., Div. Five. Sept. 3, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ALBERT TAYLOR, Defendant and Appellant.

■■■■■■■■

■■■■■■■■

■■■■■■■■

## COUNSEL

Irving S. Feffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—After a court trial defendant was convicted of second degree murder.

The facts revealed that the victim died as a result of an overdose of heroin which had been furnished to her by the defendant. (Health & Saf. Code, § 11501.) In finding the defendant guilty the trial court expressed a reasonable doubt that, on the evidence before it, defendant had actually injected the heroin into the victim. Only two questions are involved in this appeal: (1) whether the mere furnishing of heroin in violation of section 11501 is a felony inherently dangerous to human life, so that it will support a conviction of felony murder; and (2) whether the Supreme Court's decision in *People* v. *Ireland,* 70 Cal.2d 522, 538-540 [75 Cal. Rptr. 188, 450 P.2d 580], precludes the application of the felony-murder rule in the case at bar.

■■ Defendant concedes that in *People* v. *Poindexter,* 51 Cal.2d 142, 149 [330 P.2d 763], it was held that a violation of former section 11714 of the Health and Safety Code, which prohibited, in part, the selling, furnishing, administering or giving of a narcotic to a minor, was held to be the doing of an act dangerous to human life.[1] The precise language of

---

[1] The evidence in the case at bar shows that the victim was only 18 years old. The courts have not read *Poindexter* as depending, in any way, on the victim's minority. The reason why, in that case, the People stressed former section 11714 as the underlying felony was that their principal witness, who had in fact solicited Poindexter to furnish heroin to the victim and who was, arguably, an accomplice to a violation of section 11501, was also a minor and had also received heroin from the defendant.

■■■■

the Supreme Court was: ". . . Death resulting from the commission of a felony such as furnishing, selling or administering of narcotics to a minor constitutes murder of the second degree. . . ." (51 Cal.2d at p. 149.) It is noted that the verbs are connected by the disjunctive "or." *Poindexter* was followed by *Ureta* v. *Superior Court,* 199 Cal.App.2d 672, 676 [18 Cal.Rptr. 873], which contained a statement, perhaps dictum: ". . . It makes no difference whether deceased or another actually injected the narcotic. The person who furnished him the narcotic is liable even though deceased did the actual administering of it." *People* v. *Mayfield,* 225 Cal. App.2d 263, 267-268 [37 Cal.Rptr. 340], on the other hand, contains language recognizing that the statement in *Ureta,* just quoted, was not necessary to the decision and suggesting that a violation of section 11501 can be the underlying felony only if the defendant not only furnishes, but also administers the narcotic. In *People* v. *Cline,* 270 Cal.App.2d 328, 332 [75 Cal.Rptr. 459, 32 A.L.R.3d 582], however, a case involving phenobarbital, a restricted dangerous drug rather than a narcotic (Health & Saf. Code, § 11912), a felony-murder conviction was upheld without evidence of administering by the defendant and *Mayfield,* in turn, was reduced to a dictum. It thus appears to be the law, at present, that the mere furnishing of heroin is a felony inherently dangerous to human life which will, *Ireland* aside, support a felony-murder conviction.

Defendant argues that the rule of *People* v. *Williams,* 63 Cal.2d 452, 458 [47 Cal.Rptr. 7, 406 P.2d 647] and *People* v. *Phillips,* 64 Cal.2d 574, 582-584 [51 Cal.Rptr. 225, 414 P.2d 353], to the effect that we must look to the felony "in the abstract" precludes the mere furnishing of heroin from constituting the underlying felony to a felony murder. That very point, however, was involved in *Cline,* where the court cited *Phillips* and the Supreme Court denied a hearing.

In *Ireland* it was held that an assault with a deadly weapon (Pen. Code, § 245) could not serve as the underlying felony to a felony murder and that a verdict based on instructions which permitted the jury to ignore the question of malice in fact could not stand.

Whether or not, under the *Ireland* doctrine, the violation of section 11501 of the Health and Safety Code merged into the homicide so that defendant's conviction cannot stand unless the record contains substan-

---

By relying on section 11714 it was possible to argue successfully that as to that felony the witness was not an accomplice but a victim. It should also be noted that in *Poindexter* there was no direct evidence that defendant had administered the narcotic. There was evidence that he helped the principal witness administer it to himself, but that witness was not present when the victim, in defendant's presence, received the heroin into his bloodstream. Defendant himself denied both furnishing and administering.

tial evidence of actual malice, express or implied, is not easy to answer, for neither *Ireland* nor *People* v. *Wilson,* 1 Cal.3d 431 [82 Cal.Rptr. 494, 462 P.2d 22] nor *People* v. *Sears,* 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847], *Ireland's* progeny, are explicit with respect to the rationale of the doctrine of merger as it is to be applied in California.

The difficulty arises from the fact that while *Ireland* involved an assault with a deadly weapon, and *Wilson* and *Sears* dealt with burglaries, which were such because of defendants' intentions to commit such assaults, the language of *Ireland* is broader and applies to all felonies which are "an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (70 Cal.2d at p. 539.) Footnote 14, which is inserted in the *Ireland* opinion at this point, makes it clear that the court was not just speaking of offenses necessarily embraced within the statutory definition of murder. If there was any doubt on that score, *Wilson* and *Sears* settled the point.

Although, in *Ireland,* the court announced that in this state the merger doctrine, when applied to different facts, would not necessarily "assume the exact outlines and proportions of the so-called 'merger' doctrine" enunciated in other jurisdictions (70 Cal.2d at p. 540), obviously the decisions of those jurisdictions, particularly those from New York, are extremely important in pinpointing the rationale of *Ireland.*

The earliest New York case cited by the court is *People* v. *Hüter,* 184 N.Y. 237 [77 N.E. 6, 20 N.Y. Crim. 36]. There the defendant was accused of killing an officer while resisting an arrest. The facts were that he was fleeing from a burglary and, when about to be overtaken, drew his revolver and fired at the officer. This was "assault in the second degree," a felony. Having decided to reverse the conviction for other reasons, the court spoke about merger solely to guide the trial court on retrial. First it noted that generally speaking the felony-murder rule substitutes the felony for the malice which would otherwise have to be present. Then it goes on: "Under the provisions of the Penal Code, to which we have called attention, it is provided that a person who assaults an officer to prevent or resist the lawful apprehension of himself commits a felony. A person may prevent an arrest by hiding; he may resist in various ways without assaulting or using violence. It is apparent, therefore, that the gist of the offense is the assault and when it is by violence, inflicting an injury to the person so assaulted, resulting in death, the act becomes a constituent part of the homicide and is merged in the charge therefor. It does not follow, however, that in the other felonies, in order to bring the case within the statute defining murder, the act which caused death must be a different one from that done in

the commission of the collateral felony. By the same act one may commit two crimes, and to constitute murder in the first degree, as in the commission of a felony, it is not necessary that there should be an act collateral to or independent of that which causes the death; *but if the act causing the death be committed with a collateral and independent felonious design it is sufficient; thus, if the violence used to commit a rape or a robbery results in death the case is plainly within the statute, and so this court has held in the cases above referred to. But as to the felony under consideration, we think, it was merged in the homicide."* (*People* v. *Hüter, supra,* 184 N.Y. at p. 244. Italics added.)

Obviously defendant's violation of section 11501 was committed with a "collateral and independent felonious design."

The next important New York case is *People* v. *Wagner,* 245 N.Y. 143 [156 N.E. 644]. This is the case with which our Supreme Court, in *People* v. *Sears, supra,* 2 Cal.3d 180, 188-189, would not go along. Here the defendant feloniously assaulted A with a blackjack. That assault was in full swing when B arrived at the scene. B tried to come to A's rescue. Defendant then assaulted B and killed him. The court held that B was killed in the course of a felonious assault on A which was still in progress. The assault on A was held to be an independent felony and the conviction was affirmed.

In *Sears* the Supreme Court said that this distinction made by the New York court was "untenable in the light of ordinary principles of culpability."

Finally in *People* v. *Moran,* 246 N.Y. 100 [158 N.E. 35], we find another variant. Here the defendant shot and killed two policemen. The trial court ruled that it was felony murder as a matter of law and that the jury did not have to concern itself with intent to kill, deliberation or premeditation. This was wrong. "Homicide is murder in the first degree when perpetrated with a deliberate and premeditated design to kill, or, without such design, while engaged in the commission of a felony. To make the quality of the intent indifferent, it is not enough to show that the homicide was felonious, or that there was a felonious assault which culminated in homicide. *People* v. *Hüter, supra. Such a holding would mean that every homicide, not justifiable or excusable, would occur in the commission of a felony, with the result that intent to kill and deliberation and premeditation would never be essential. People* v. *Wagner, supra,* at page 148 (156 N.E. 646). The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as, e. g., robbery or larceny or burglary or rape." (*People* v. *Moran, supra,* 246 N.Y. at p. 102. Italics added.)

Leaving aside the reference to burglary which is partially erroneous under *Wilson*—that is to say, where the only felonious intent is to assault the victim of the "murder"—we finally see the New York rationale for the merger doctrine appear: that if a felonious assault on the person of the victim is adequate to constitute the underlying felony, then the statutory language about malice, premeditation or deliberation would be superfluous.[2] Putting the rationale slightly differently: the Legislature has prescribed that when one assaults somebody and as a result of that assault the victim dies, the crime is second degree murder if the assaulter acts with malice. It would be a clear subversion of the legislative intent if the same result could be reached by ignoring malice and applying the felony-murder rule to the assault which is part and parcel of the attack. That is what the Supreme Court, in *Ireland* called "bootstrapping."[3]

We have no reason to believe that the basic rationale of *Ireland* is very

---

[2]At the time, under New York law, every felony murder was murder in the first degree. The law was drastically revised by section 125.25 of the new Penal Law, effective September 1, 1967. (Laws 1965, ch. 1030.)

[3]This analysis is borne out in the note cited by the Supreme Court in footnote 15 of the *Ireland* opinion. *The Doctrine of Merger in Felony-Murder and Misdemeanor-Manslaughter* (1960) 35 St. John's L.Rev. 109 at page 118. A note in 22 Stanford Law Review 1059 at pages 1061-1062, *The California Supreme Court Assaults the Felony-Murder Rule,* comes up with a different rationale: "The California supreme court reversed the decision and ordered a new trial. [Footnote omitted.] The court recognized that application of the felony-murder rule in *Ireland* would obliterate all distinctions between murder and manslaughter whenever a deadly weapon was used, [footnote omitted] since every death resulting from the use of a deadly weapon is preceded by an assault with that weapon. If such an assault could support a felony-murder conviction, all such homicides would automatically be second degree murder; the prosecution could always use the assault to impute the malice necessary for murder without a further showing of the defendant's intent or mental state. . . ." With all respect, we must disagree with this reasoning. The assumption that "every death resulting from the use of a deadly weapon is preceded by an assault with that weapon" is wrong unless the word "use" is synonymous with "use to assault." (Cf. *People* v. *Alotis,* 60 Cal.2d 698, 705-707 [36 Cal.Rptr. 443, 388 P.2d 675]; *People* v. *Southack,* 39 Cal.2d 578, 591-592 [248 P.2d 12].) No one has ever contended that death resulting from the negligent discharge of a firearm supports anything but a conviction for involuntary manslaughter (e.g., *People* v. *Carmen,* 36 Cal.2d 768, 776 [228 P.2d 281]); nor has the felony-murder rule ever threatened such holdings as *People* v. *Wilson,* 66 Cal.2d 749, 763-764 [59 Cal.Rptr. 156, 427 P.2d 820], to the effect that a violation of section 417 of the Penal Code, a misdemeanor, even though it results in death, is not murder. On the other hand, if the writer of the note employed the word "use" as meaning "use to assault," *Ireland* cannot be explained in terms of an attempt to avoid the obliteration of the distinctions between manslaughter and murder, for such use is a felony. (Pen. Code, § 245.) Nevertheless, it is, of course, undeniable that the merger doctrine preserves the distinction between murder and manslaughter in at least two situations: 1. where, as in *Ireland*, a defense of diminished capacity is put forward; and 2. where the assault arises "upon a sudden quarrel or heat of passion." (Pen. Code, § 192, subd. 1.) Curiously, a hint at this latter ground which appeared in the *Ireland* opinion as first filed on February 28, 1969 (fn. 13), was later eliminated by a modification on April 9, 1969.

different from that enunciated by the New York courts.[4] Obviously that rationale does not encompass a felony such as the furnishing of narcotics which, to use the language of *People* v. *Hüter, supra,* is clearly "committed with a collateral and independent felonious design." Nor does application of the felony-murder rule in such a case involve us in the kind of "bootstrapping" condemned in *Ireland:* this is simply not a situation where the Legislature has demanded a showing of actual malice, as distinguished from malice implied in law by way of the felony-murder rule.[5]

In *Ireland* the Supreme Court concluded that the application of the felony-murder rule in cases where the underlying felony is assault with a deadly weapon, "extends the operation of that rule 'beyond any rational function that it is designed to serve.'" It then referred to *People* v. *Washington,* 62 Cal.2d 777, 781 [44 Cal.Rptr. 442, 402 P.2d 130], where it had said that: "The purpose of the felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit." While the felony-murder rule can hardly be much of a deterrent to a defendant who has decided to assault his victim with a deadly weapon, it seems obvious that in the situation presented in the case at bar, it does serve a rational purpose: knowledge that the death of a person to whom heroin is furnished may result in a conviction for murder should have some effect on the defendant's readiness to do the furnishing.

As indicated at the outset, the problem with this case is not any difficulty in factually distinguishing *Ireland, Wilson* and *Sears;* nor, as we have shown, does the rationale of those cases apply to the situation at bar. The difficulty lies in determining just exactly what the Supreme Court meant when, in *Ireland,* it referred to felonies which are "an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." While it is noted that in both *Wilson* and *Sears* the court relied on that phrase in the *Ireland*

---

[4]There is, however, this obvious difference between our statute and former New York law, which made all felony murders murder in the first degree (see fn. 2, *supra*): there, without the merger doctrine, jury consideration of deliberation and premeditation, as well as malice would have become unnecessary; here, unless the underlying felony is burglary, as in *Wilson* and *Sears,* the felony-murder doctrine without the merger modification only hurdles the question of malice. It was the distinction between its own and the New York statute, which caused the Supreme Court of Washington, in *State* v. *Harris,* 69 Wn.2d 928 [421 P.2d 662], to reject the merger doctrine.

[5]It is recognized, of course, that the felony-murder rule is not statutory, except perhaps to the extent that homicides committed in the perpetration of certain specified felonies are made murder in the first degree. (Pen. Code, § 189. See *People* v. *Phillips,* 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353]; cf. *People* v. *Reed,* 270 Cal.App.2d 37, 47, fn. 3 [75 Cal.Rptr. 430].)

opinion in holding that the merger doctrine applied to an entry which was a burglary because of an intent to commit an assault with a deadly weapon, such reliance was not necessary to those decisions. The actual holdings of *Wilson* and *Sears* follow quite easily from the rationale of *Ireland,* if we correctly understand it, without needing support on the theory that the burglaries were included "in fact" within the murder charge. Just as the legislative intent that an assault on a human being is murder only if it is made with malice is subverted if such malice if found in the legal fiction of the felony-murder rule, so is it emasculated if the same nonmurder in the second degree is escalated to a murder in the first degree by the "entry-with-intent-to-commit-an-assault-with-a-deadly-weapon" route.

Just how broadly the *Ireland* language concerning felonies which are an integral part of the homicide and are included in fact within the offense charged will be interpreted is not for us to say. The perimeter of the connection between the underlying felony and the death of the victim is that the homicide must be the direct causal result of the commission of the felony. (*People* v. *Ford,* 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892].) Unless the Supreme Court intended to abolish second degree felony murder, we must assume that there are situations where a felony inherently dangerous to human life can be the direct cause of a homicide without, at the same time, being an integral part thereof and included in fact therein. We hold that the case at bar presents such a situation.

The judgment is affirmed.

Stephens, J., and Reppy, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 28, 1970. Peters, J., was of the opinion that the petition should be granted.